UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONNELL JOHNSON, ) | Civil Action No.: 02-10730 MEL |
| Plaintiff ) | |
| v. ) | |
| PAUL EVANS, WILLIAM MAHONEY, ) DANIEL KEELER, JAMES DOYLE ) and CITY OF BOSTON ) | |
| Defendants ) | |

## AMENDED COMPLAINT

1. This is an action for money damages for the violation of the plaintiff's constitutional rights brought pursuant to 42 U.S.C. § 1983. Plaintiff Donnell Johnson alleges that the defendant police officers William Mahoney, Daniel Keeler, and James Doyle withheld exculpatory evidence in violation of the plaintiff's rights under the Massachusetts Constitution and the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. Further, at the plaintiff's trial, defendant Mahoney committed perjury during his testimony relating to the existence of the withheld exculpatory evidence. In part a result of the misconduct cited above, the plaintiff was convicted of first-degree murder and sentenced to not more than twenty years but not less than eighteen years in prison. The plaintiff was released after spending over five years in prison, when the District Attorney entered a nolle prosequi. The plaintiff further alleges that the defendant City of Boston had a policy, custom, or practice of improper and inadequate investigation and discipline of acts of misconduct committed by Boston police

DOCKETED

1

officers, including withholding of exculpatory evidence and perjury, otherwise known as "testilying." The defendant police officers Mahoney, Keeler, and Doyle conspired to conceal the existence of exculpatory evidence and deny the plaintiff his right to a fair trial. The defendant City of Boston had a policy, custom, or practice of failure to train its police officers adequately in the laws regarding exculpatory evidence, perjury, and other laws, rules, and regulations relating to the rights of a citizen charged with a crime. These policies, customs, or practices resulted in implicit tolerance and authorization of continuing misconduct and caused the plaintiff's improper deprivation of his constitutional rights.

## JURISDICTION

2.  Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and on the pendent jurisdiction of this court to entertain a claim arising under state law.

## PARTIES

3.  Plaintiff Donnell Johnson is a student in Mississippi and a resident there.

4.  Defendant Paul Evans is a citizen of Massachusetts. At all times material to the allegations in the Complaint he was the duly appointed Police Commissioner and member of the City of Boston Police Department and acting under color of law. He is being sued in his individual capacity.

5.  Defendant William Mahoney was at all times relevant to this complaint a police officer employed by the City of Boston. He is being sued in his individual capacity as a police officer for the defendant City of Boston.

6. Defendant Daniel Keeler was at all times relevant to this complaint a police officer employed by the City of Boston. He is being sued in his individual capacity as a police officer for the defendant City of Boston.

7. Defendant James Doyle was at all times relevant to this complaint a police officer employed by the City of Boston. He is being sued in his individual capacity as a police officer for the defendant City of Boston.

8. Defendant City of Boston is a municipality duly authorized under the laws of the Commonwealth of Massachusetts and the employer of the individual defendants.

## FACTS

9. After being convicted of first-degree murder on November 27, 1996, and serving over five years of the resulting eighteen to twenty year sentence, plaintiff Donnell Johnson's conviction was vacated and the District Attorney entered a nolle prosequi on March 28, 2000.

10. In the early evening of October 31, 1994, a shooting occurred in Bromley-Heath, a local neighborhood in Roxbury, in which Kamaya Santos was shot.

11. Later that same Halloween evening, nine-year old Jermaine Goffigan, returning from his birthday party and trick-or-treating, was murdered in the local housing developments of Roxbury known as Academy Homes. There was a rivalry between groups of young people in Bromley Heath and Academy Homes.

12. Deborah Haskin, the mother of the victim, noticed two individuals in profile creeping along Weaver Way in Academy Homes shortly prior to the shooting.

13. She testified that she observed one of the individuals from the rear and that the individual put his hand over a fence and began firing a gun.

14. Another witness, Kevin Murphy, a gang member from Academy Homes who was standing next to the victim at the time of the shooting, selected the plaintiff's photograph from a photograph array, as a picture of the shooter. The plaintiff has freckles, but no other photograph in the array depicted a person with freckles.

15. Shortly after Deborah Haskins spoke with Kevin Murphy, she also selected the plaintiff's photograph from the array.

16. Based only upon the eyewitness testimony of these individuals, the police arrested plaintiff Donnell Johnson for the murder of Jermaine Goffigan.

17. After having been read his Miranda rights, the plaintiff waived his rights and agreed to talk with the police. The plaintiff's mother and father assented to the questioning and defendants Doyle and Keeler interrogated the plaintiff for approximately forty-five minutes in the presence of his mother and father.

18. The plaintiff denied any involvement in the shooting and informed the officers that he had been home with his family that night.

19. On numerous occasions, both before the bench trial and before the de novo jury trial, the plaintiff requested the production of any statements made by the plaintiff or the plaintiff's mother. The prosecution continually responded that none existed.

20. At the plaintiff's bench trial for the first-degree murder of Jermaine Goffigan, defendant William Mahoney testified as follows:

> Q. Well, was any statement taken from Donnell Johnson?
> A. No.
> Q. Nothing was written down?
> A. Nothing was taken.
> Q. Well, what happened after [the waiver] was signed?
> A. Mrs. Johnson was the co-signee of that, and she

4

|   |   |
|---|---|
| | refused to allow us to question the boy. |
| Q. | After it was signed? |
| A. | Yes. |
| Q. | So absolutely no questioning was done? |
| A. | Other than do you understand your Miranda rights, and aspects of that. |
| Q. | So you have absolutely no statements from the defendant relative to that incident? |
| A. | That is correct. |

21. The defendant did not and could not testify at this trial since, after defendant Mahoney denied that any statement was given by the plaintiff when the defense knew there was, the defense could not risk putting the defendant on the stand to be subjected to possible impeachment by the prior statement that could have surfaced at the time of the cross-examination.

22. The trier of fact was left with the evidence that the defendant had refused to talk to the police, had not denied involvement, and had not given an alibi.

23. The plaintiff was thus found guilty at the bench trial.

24. Defendants Mahoney, Keeler, and Doyle had withheld knowledge of the plaintiff's statement from Assistant District Attorney Robert Tochka.

25. The Assistant District Attorney did not receive the written reports from either Defendant Mahoney, Keeler, or Doyle until the evening before the Commonwealth rested at the jury trial.

26. At the jury trial, the prosecutor, on the day before the Commonwealth rested, disclosed that defendants Doyle and Keeler had obtained statements from the plaintiff and his mother on the night of his arrest and had summarized those statements in written reports. He provided the defense with the statements at that point.

27. The statements of the plaintiff and his mother were exculpatory evidence that would have assisted the defendant at his second trial in better defending himself had they been turned over in a timely fashion.

28. The defendant City of Boston implicitly tolerated unlawful police practices including suppression of exculpatory evidence and perjury by failing to investigate properly and punish adequately officers who withheld exculpatory evidence and gave false testimony. Boston police officers thus believed they could violate with impunity the constitutional rights of defendants.

29. Defendant Evans on becoming the Police Commissioner on February 14, 1994 and through the period of time relevant to this suit did nothing to increase the credibility of the internal affairs procedures and continued the custom and policy that brought about the police abuses in this case.

30. Because of the actions of defendants Evans, Mahoney, Keeler, Doyle, and City of Boston, the plaintiff sustained severe permanent personal and emotional injuries, including but not limited to, loss of liberty, loss of income, humiliation, and emotional distress.

### COUNT I: VIOLATION OF 42 U.S.C. § 1983 BY DEFENDANTS MAHONEY, KEELER, AND DOYLE

31. The plaintiff restates the allegations in paragraphs 1 through 30 and incorporates said paragraphs herein as paragraph 31.

32. By the actions described in paragraphs 1 through 30, defendants Mahoney, Keeler, and Doyle, under color of law, deprived the plaintiff of due process and his right to a fair trial, in violation of 42 U.S.C. § 1983 and the Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States and are jointly liable.

## COUNT II: VIOLATION OF 42 U.S.C. § 1983-CONSPIRACY BY DEFENDANTS MAHONEY, KEELER, AND DOYLE

33. The Plaintiff restates the allegations in paragraphs 1 through 32 and incorporates said paragraphs herein as paragraph 33.

34. Defendant police officers Mahoney, Keeler, and Doyle conspired together to deprive the plaintiff of his constitutional rights, his right to receive exculpatory evidence, and his right to a fair trial and are jointly liable.

35. In furtherance of this conspiracy, the defendant police officers concealed the existence of exculpatory evidence and, in furtherance of the conspiracy, officer Mahoney committed perjury at the plaintiff's trial for murder.

36. As a result of the conspiracy between the defendant police officers, the plaintiff was deprived of his constitutional rights and suffered the damages alleged in paragraph 30.

## COUNT II: VIOLATION OF 42 U.S.C. §1983 BY DEFENDANT CITY OF BOSTON

37. The plaintiff restates the allegations in paragraphs 1 through 36 and incorporates said paragraphs herein as paragraph 37.

38. The City of Boston developed and maintained policies, customs, or practices exhibiting deliberate indifference to the constitutional rights of persons in Boston, which caused the violation of the plaintiff's rights.

39. It was the policy, custom, or practice of the defendant City of Boston to allow the defendant officers and other members of the police department to ignore laws, rules, and regulations governing proper police conduct. Pursuant to this policy, custom, or practice, defendant City of Boston implicitly tolerated unlawful police practices

including perjury and the withholding of exculpatory evidence, failed to investigate adequately citizen complaints against its police officers, and failed to train and supervise properly its officers. The defendant City also tolerated a Code of Silence that allowed officers to violate constitutional rights of citizens with impunity.

40. The defendant City of Boston's policies, practices, or customs, as described in paragraphs 37 and 38, are illustrated by but not limited to the following conduct:

a. On November 21, 1991, a Suffolk County grand jury returned indictments against Tarahn Harris for murder in the first degree. In his ruling in favor of Harris' Motion to Dismiss the indictment, the Honorable Isaac Borenstein, Justice of the Superior Court, found that City of Boston police officer Herbert Spellman "knowingly and intentionally falsified, recklessly fabricated, distorted, misled and deceived the grand jury." Officer Spellman distorted Harris' statement, suggesting to the jury that Harris made incriminating statements, while failing to inform the jury that Harris actually made exculpatory statements as well. He assigned to Harris statements that Harris had not made and knowledge that Harris may not have had. Judge Borenstein was "convinced that Officer Spellman knowingly falsified and distorted the evidence against Tarahn Harris...for the purpose of strengthening what appeared to be a weak case against Tarahn Harris." In response to a complaint of misconduct relating to this incident made to the Boston Police Department, the Boston Police Department on July 15, 1999, in spite of Judge Borenstein's findings, found the allegations against Officer Spellman to be "Not Sustained" and the Police Commissioner accepted the finding.

      b.    Christopher Harding was wrongfully arrested and convicted of attempted murder because members of the Boston police department committed perjury and withheld exculpatory evidence. On August 18, 1989, a shooting took place in the Mission Hill Housing Project where Mr. Harding lived. Boston police officers captured one suspect but the other fled. Officer Terrence O'Neil claimed he saw Mr. Harding running away and that Mr. Harding fired three shots, one of which was fired at him. Officer Mitchell wrote a report supporting O'Neil's claims, which she knew were false. Boston police officer Michael Stratton testified at trial that he witnessed Mr. Harding shoot at O'Neil. The officers' version of the events was proven to be false by a ballistics expert before trial. The expert proved conclusively that the bullet that struck the victim had been fired from the gun belonging to the second suspect and that only three bullets were fired from that gun. Thus, it was impossible for O'Neil, Stratton, or Mitchell to have witnessed three shots fired from that gun, as they claimed. The Boston Police Department suppressed this crucial exculpatory evidence of the ballistic expert's findings until just prior to Mr. Harding's trial. In addition, because she might have recanted her earlier report, the Boston police department falsely stated that Officer Mitchell was out of town during the trial and could not testify, thereby suppressing exculpatory evidence. Mr. Harding was released after spending approximately seven years in jail. Boston police officers Stratton and Mitchell have never been disciplined in connection with this misconduct and O'Neil was not fired for his involvement until January 20, 2000.

      c.    City of Boston police officers falsely arrested Gary Willoughby in September 1989, and charged him with homicide. He was a poor Jamaican immigrant with no criminal record and no connection to the incident. After a police officer

9

committed perjury before the grand jury, Mr. Willoughby was acquitted of all wrongdoing in 1990. He subsequently sued the City of Boston and the police officer. The City paid for the officer's defense and, in 1994, it compensated Mr. Willoughby for the wrongs committed against him. The police officer involved has never been disciplined in connection with this incident.

    d.    After serving seven years and three months in prison, Marvin Mitchell was vindicated through DNA testing and his conviction for rape was vacated. The victim described her assailant to the police as having worn pink pants, while Mr. Mitchell told the police he had been wearing gray pants on the day of the attack. In addition, the victim told the officers that the assailant had one crossed eye and was clean-shaven. Mr. Mitchell, on the other hand, did not have a crossed eye and had a goatee at the time of the incident. Boston police officers Trent Holland and Robin DeMarco both falsely testified under oath that Mr. Mitchell, while being detained, had suddenly exclaimed that he had been wearing pink pants on the day the victim was attacked. Officers DeMarco and Holland have never been disciplined in connection with this misconduct.

    e.    A judge threw out a jury's 1989 guilty verdicts on drug charges secured through the testimony of Boston police officer Trent Holland. When Superior Court Judge Elizabeth A. Porado, who was later elevated to the Court of Appeals, threw out the verdicts, she ordered an investigation into whether or not Holland committed perjury. Judge Porado concluded that Holland's testimony about watching a drug transaction from a certain vantage point was necessarily false because his view would have been obstructed by a building. The perjury investigation was conducted by Boston police

Sergeant James Curran. Not only was Holland not disciplined in connection with this misconduct, he was later promoted to detective.

 f. On October 23, 1989, Charles and Carol Stuart were shot in the Mission Hill neighborhood of Boston. William Bennett became a suspect and through intimidation and coercion, the police produced witnesses to implicate him. The police threatened the witnesses with arrest, physical beatings and imprisonment if they did not testify against Bennett. The police offered witnesses money and other inducements in an attempt to coerce them to testify falsely against Bennett. They supplied witnesses with crucial facts previously known to them for the purpose of enhancing the witnesses' knowledge of incriminating facts against Bennett. In addition, the police planted evidence in homes of witnesses in order to pressure them into incriminating Bennett. Bennett was, in fact, innocent of the charges.

COUNT III: VIOLATION OF M.G.L. c. 12 § 11I

 41. The plaintiff restates the allegations in paragraph 1 through 40 and incorporates said paragraphs herein as paragraph 41.

 42. By the actions described in paragraphs 1 through 39, defendants Mahoney, Keeler, and Doyle deprived the plaintiff of his civil rights, secured by the Constitutions of the United States and the Commonwealth of Massachusetts, through the use of threats, intimidation, and coercion, in violation of M.G.L. c.12 § 11I.

 **Wherefore,** the plaintiff requests this Court:

1. Award compensatory damages against the defendants jointly and severally;

2. Award punitive damages against the defendants;

3. Award the costs of this action, including reasonable attorneys fees.

## JURY TRIAL DEMAND

A jury trial is hereby demanded.

Respectfully submitted
Plaintiff Donnell Johnson
By his attorney,

_____
Stephen B. Hrones
BBO#242850
Hrones & Garrity
Lewis Wharf – Bay 232
Boston, MA 02110-3927
(617) 227-4019

## CERTIFICATE OF SERVICE

I, Stephen Hrones, hereby certify that I have this day forwarded a copy of the Amended Complaint by mailing this 10th day of June 2002, postage prepaid first class mail to, Susan M. Weise, Esquire, City of Boston Law Department, 615 City Hall, Boston, MA 02201.

*[signature]*
Stephen Hrones, Esq.