```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


                                  )
DONNELL JOHNSON,                  )
                                  )
    Plaintiff,                    )
                                  )
         v.                       )         02-CV-10730-MEL
                                  )
WILLIAM MAHONEY and               )
DANIEL KEELER,                    )
                                  )
    Defendants.                   )
                                  )
```

MEMORANDUM AND ORDER

LASKER, D.J.

      Following a bench trial and then a <u>de novo</u> jury trial in the Boston Division of the Juvenile Court Department, Donnell Johnson was found delinquent by reason of murder in the first degree, assault and battery by means of a dangerous weapon, armed assault with intent to murder, and possession of a firearm, and sentenced to eighteen to twenty years in prison. Five years into his sentence, the District Attorney entered a nolle prosequi, and Johnson was released.

      Johnson alleges that the defendant police officers, William Mahoney and Daniel Keeler, withheld exculpatory evidence in violation of his rights to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendment of the

United States Constitution and his rights under the constitution of the Commonwealth of Massachusetts.

Johnson sues for violation of 42 U.S.C. § 1983 (Count I); violation of § 1983 by conspiracy (Count II)[1]; and violation of M.G.L. ch. § 12, § 11I (Count III).

Keeler and Mahoney move, separately, for summary judgment on all counts.  The motions are GRANTED.

## I. Background

On October 31, 1994, nine-year old Jermaine Goffigan was murdered in a public housing development in Roxbury, Massachusetts known as Academy Homes.  (Amended Complaint, ¶ 11.) Based on eye-witness statements, Johnson was arrested for the murder.  (Id., ¶ 16.)  After having been read his Miranda rights, Johnson agreed to talk with police.  Defendant Keeler interrogated Johnson for approximately forty-five minutes in the presence of his mother and father.  (Id., ¶ 17.) Johnson denied any involvement in the shooting and informed the officers that he had been home with his family that night. (Id., ¶ 18.) Several times before the trial, Johnson's counsel

---

[1] Johnson's Amended Complaint includes two counts identified as "Count II."  The other "Count II," which alleged violation of § 1983 by the City of Boston, was dismissed by stipulation earlier in this action.

requested production of statements made by him or his mother, and the prosecution responded that none existed. (Id., ¶ 19.)

In March 1996, at Johnson's bench trial for first degree murder, defendant Mahoney testified as follows:

> Q. Well, was any statement taken from Donnell Johnson?
> A. No.
> Q. Nothing was written down?
> A. Nothing was taken.
> Q. Well, what happened after the waiver was signed?
> A. Mrs. Johnson was the co-signee of that, and she refused to allow us to question the boy.
> Q. After it was signed?
> A. Yes.
> Q. So, absolutely no questioning was done?
> A. Other than do you understand your Miranda rights, and aspects of that.
> Q. So you have absolutely no statements from the defendant relative to that incident?
> A. That is correct.

(Id., ¶ 20.)

Following the bench trial, Johnson was found delinquent of the charges against him. He then exercised his right to a de novo jury trial. Between the bench trial and the jury trial, and during the jury trial itself, Johnson's counsel continued to press for production of statements made by Johnson and his mother, and continued to be told that no such statements existed.

On November 21, 1996, prior to the Commonwealth

resting its case-in-chief at the jury trial and prior to the testimony of Keeler and Mahoney, Assistant District Attorney Robert Tochka delivered the statements to Johnson's counsel. Upon receiving the statements, Johnson's counsel moved to dismiss the indictments, claiming prosecutorial and police misconduct. This motion was denied. Johnson's counsel cross-examined Keeler and Mahoney regarding the statements, and presented seventeen defense witnesses, including Johnson, his mother, and his grandmother.

Johnson was found delinquent at the jury trial and sentenced to 18 to 20 years. On July 7, 1998, in <u>Commonwealth v. Kent K.</u>, 427 Mass. 754, 696 N.E.2d 511 (Mass 1998), the Massachusetts Supreme Judicial Court affirmed the delinquency adjudication, ruling that the failure of the Commonwealth to turn over the statements was not prejudicial to Johnson. In 2000, after the discovery of new evidence exonerating Johnson, the convictions were vacated.

Johnson charges that Mahoney's testimony constituted perjury; he further alleges that Mahoney and Keeler, acting together, withheld knowledge of Johnson's statement from Tochka. Johnson cites Tochka's deposition testimony stating that he had repeatedly asked defendants about the existence of such statements and was told there were none. According to

Tochka, the evening before the Commonwealth rested at the <u>de novo</u> jury trial, Mahoney faxed the statements to him, and he immediately turned them over to Johnson's attorney.  Tochka testified that he had the following exchange with the defendants the next day:

> ...I explained to both of them [Mahoney and Keeler] that they were going to have to explain how the statement was turned over at this stage, at this late stage. Sergeant Keeler said to Sergeant Mahoney, "Just say that it was inadvertent." I then said to Sergeant Keeler that Sergeant Mahoney is going to have to explain how in the transcript of the bench trial he said that there was no statement, that the defendant made no statement. Sergeant Mahoney – Sergeant Keeler said words to the effect, "I'm not going to take the fall for this."

Tochka Dep., Exh. C to Pl.'s Opp. to Keeler's Mtn. for Summ. Judg., at 53:12-24.

According to Johnson, his defense would have been stronger had the defendants provided his attorney with the statements in a timely fashion.  Johnson contends that he would have taken the stand at his bench trial, but could not,

> since, after defendant Mahoney denied that any statement was given by the plaintiff when the defense knew there was, the defense could not risk putting the defendant on the stand to be subjected to possible impeachment by the prior statement that could have surfaced at the time of the cross-examination.

5

(Amended Complaint, ¶ 21.)  He further asserts that "[t]he trier of fact was left with the evidence that the defendant had refused to talk to the police, had not denied involvement, and had not given an alibi."  (Id., ¶ 22.)

## II. Motions for Summary Judgment[2]

<u>Counts I and II (§ 1983 claims)</u>:

Johnson's allegations regarding defendants' actions are deeply troubling.  As the Massachusetts Supreme Judicial Court remarked in ruling on Johnson's appeal, Mahoney's inconsistent testimony at the bench and jury trials, "suggests either serious misconduct or negligence." <u>Commonwealth v. Kent K.</u>, 427 Mass. 754, 758, 696 N.E.2d 511, 514 n. 3 (Mass 1998).

As disturbing as the allegations may be, however, Johnson has failed to present evidence sufficient to create a genuine issue of material fact as to liability under § 1983.  Although the bench trial may have been tainted by the failure to disclose Johnson's statement,[3] Johnson received an

---

[2] The motions, although filed separately, present similar arguments and are decided on identical grounds.  Hence, they are considered together.

[3] The SJC concluded otherwise in its denial of Johnson's appeal of his conviction:

> The juvenile's statement to the police contains only a generic denial of the

impartial <u>de novo</u> jury trial after his bench trial. Johnson took the stand at the trial, as did his mother and grandmother, and Johnson's counsel cross-examined Mahoney and Keeler at length regarding the late disclosure of Johnson's statement. Any errors at the bench trial, "even if of constitutional magnitude, do not survive as a basis for complaint once the case has moved to the second tier," trial *de novo* before a jury. <u>Commonwealth v. Higgins</u>, 23 Mass.App.Ct. 552, 557, <u>further appellate review denied</u>, 399 Mass. 1105 (1987).

---

> accusations against him, which is inadmissible evidence in the Commonwealth, and hearsay evidence – the juvenile's statement to the police that another individual admitted shooting the victim – that would not have helped the juvenile at his bench trial or at his trial by jury. Although the juvenile claims that knowledge of the police report would have bolstered defense counsel's opening statement by permitting reference to the juvenile's willingness to talk to the police immediately after the shooting, this argument is unpersuasive because defense counsel may not allude in his opening statement to evidence that he does not reasonably believe in good faith may be adduced during the trial. The juvenile therefore suffered no prejudice as a result of the Commonwealth's discovery error.

<u>Commonwealth v. Kent K.</u>, 427 Mass. at 758, 696 N.E.2d at 515. However, in the present case Johnson raises an additional element of prejudice that cannot be written off so easily: that the withholding of his statement prevented him from taking the stand in his own defense at the bench trial.

Accordingly, the motions are GRANTED as to Counts I and II.

Count III (Violation of M.G.L. ch. 12, § 11I):

The same reasoning warrants a grant of summary judgment on Count III. Moreover, there is no evidence in the record of any threats, intimidation, or coercion, as required to state a claim for a deprivation of rights under the Massachusetts statute. M.G.L. ch. 12, § 11H-11I.

Accordingly, summary judgment is GRANTED as to Count III.

The complaint is dismissed.

It is so ordered.

Date:    April 26, 2004                    /s/ Morris E. Lasker
                                                U.S.D.J.